**Union Trust Company, Appellee, v. Charles W. Shoemaker, individually, and Charles W. Shoemaker, as Executor, Appellants.**

### Gen. No. 16,906.

1. ESTATES OF DECEDENTS—*when judgment in replevin is competent to establish liability under replevin bond.* Where one of several partners prosecuting a replevin suit dies prior to the rendition of a judgment against the partnership, such judgment is competent evidence to establish liability on the part of the heirs or devisees of the deceased partner under the replevin bond given in accordance with the Michigan statutes by the partner, though the judgment, as such, does not bind the estate of the deceased partner.

2. ESTATES OF DECEDENTS—*foreign judgment need not be reduced to local judgment to reach distributed assets of deceased partner.* Where a judgment is obtained in a foreign jurisdiction against partners, it need not be reduced to a judgment in this state in order to reach by bill property received by distributees of a deceased partner.

3. ESTATES OF DECEDENTS—*claim under replevin bond contingent.* A claim under a replevin bond is contingent from the time of filing the replevin suit until time of final judgment.

4. ESTATES OF DECEDENTS—*contingent claims on becoming absolute after the lapse of the statutory period following administration may be recovered from distributees.* Sec. 70, of chapter 3, in regard to administration does not prevent claims, which were contingent during the statutory period following the granting of letters of administration, from being recovered in equity from the distributees, devisees or legatees under the will when such claims have become absolute; the only effect of the statute being to bar action against the administrator or executor.

5. ESTATES OF DECEDENTS—*personal estate of distributee under will subject in equity to contingent claims against decedent that have become absolute.* Where a claim against a decedent's estate was contingent during the statutory period following the granting of letters of administration, a court of equity, on such claim becoming absolute, will grant relief against the personal estate received by distributees or legatees as well as against real estate that has passed to the heirs or devisees.

6. REPLEVIN—*when bond binds legatees and devisees although not mentioned.* A replevin bond which by its terms binds "heirs, executors and administrators" is sufficiently broad to also bind legatees and devisees.

7. ESTATES OF DECEDENTS—*liability of distributees.* The proceeds of sale of lands in a foreign state which have been received by the devisees acting as executors and administrators, are subject in equity to claims that were contingent during the statutory period following administration but which have become absolute.

Appeal from the Circuit Court of Cook county; the Hon. CHARLES M. WALKER, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1910. Affirmed. Opinion filed October 3, 1912.

**Statement by the Court.** On December 28, 1906, Union Trust Company, a corporation, filed its bill of complaint in the Circuit Court of Cook county against Elizabeth Shoemaker and Charles W. Shoemaker, indi-

vidually, and as executors of the last will of Walter
Shoemaker, deceased, and Charles D. Bull and Edgar
R. Van Buren, praying for a decree for the amount
remaining unpaid upon a judgment for $39,381.48,
entered December 29, 1905, in the Circuit Court of
Gogebic county, Michigan, together with interest there-
on and costs.  Said judgment was rendered in a cer-
tain replevin action commenced on December 2, 1890,
in which said Walter Shoemaker (then living), Charles
D. Bull and Edgar R. Van Buren, copartners and
trading as Antigo Lumber Company, were plaintiffs,
and Wilson H. Stubbings and John J. McLaughlin
were defendants, and in which a replevin bond, signed
and sealed by said Walter Shoemaker, on behalf of
himself and his said copartners as principals, and
signed and sealed by two sureties, had been given to
the sheriff of said Gogebic county, and which said
bond, after the entry of said judgment, was assigned
to Union Trust Company, appellee herein.  Said judg-
ment was rendered in favor of the appellee herein, as
assignee of the interest of said defendants in said
replevin action, and against the then surviving part-
ners of said Antigo Lumber Company, said Charles D.
Bull and Edgar R. Van Buren.

The issues made by the pleadings were finally joined.
As no question is raised as to the sufficiency of the
pleadings, no attempt will be made to set them out.
The cause was referred to a master in chancery to take
evidence and report his conclusions as to the facts and
the law, which he did, and, upon his report being filed,
and exceptions thereto being overruled, the court en-
tered a final decree, hereinafter mentioned, in favor of
said Union Trust Company, appellee, from which de-
cree this appeal is prosecuted.  The findings of the
master and the decree of the court will be better under-
stood after a statement of the facts as they appear
from the record.

On December 2, 1890, Walter Shoemaker, Charles D.

Bull and Edgar R. Van Buren, copartners as aforesaid, commenced said replevin action. The replevin writ was placed in the hands of the sheriff of said Gogebic county to be executed, and by it the sheriff was commanded to take possession of a large quantity of lumber particularly described therein, which he did, and delivered the same to the plaintiffs. By statute the sheriff was required, before delivering replevied property to a plaintiff, to take a bond of the plaintiff, or some one in his behalf, with sureties, running to the sheriff and his assigns. In this case such a bond was delivered to the sheriff, signed and sealed by Walter Shoemaker, on behalf of himself and his said copartners, Bull and Van Buren, and by D. L. Plumer and Walter Alexander of Wausau, Wisconsin, as sureties, and they were "held and firmly bound unto David F. Foley, sheriff of the county of Gogebic, in the sum of $40,000, lawful money to be paid to the said sheriff or his assigns, for which payment * * * we bind ourselves, our, and each of our heirs, executors and administrators, jointly and severally, firmly by these presents," and its condition was "that if the above named Walter Shoemaker, Charles D. Bull and Edgar R. Van Buren shall prosecute to effect a certain suit in replevin which they have commenced * * * against Wilson H. Stubbings and John McLaughlin, the defendants, * * * and if the said defendants shall recover judgment against the said plaintiffs in the said action, then if the said plaintiffs shall return the same property, if return thereof be adjudged, and shall pay the defendants all such sums of money as may be recovered by the said defendants against them in the said action, then the above obligation to be void, otherwise to remain in full force and virtue." The replevin suit remained undisposed of in said Circuit Court of Gogebic county until the latter part of December, 1905, a period of more than fifteen years. While so pending, and after issue had been joined, the de-

fendant Stubbings, on February, 19, 1900, sold and assigned his interest in said cause of action and said replevied property to Union Trust Company, appellee herein, and said company was made a party defendant. On August 18, 1900, while said replevin suit was still pending and undisposed of, Walter Shoemaker died at Chicago, Illinois, and, his death being suggested of record, the records and proceedings were so amended as to permit said action to be carried on in the names of Bull and Van Buren, as surviving partners.

Walter Shoemaker left a last will by which, after directing the payment of all his just debts and the payment of a legacy of $1,000 to a certain trustee, he devised and bequeathed the residue of his estate to his wife, Elizabeth Shoemaker, and his son, Charles W. Shoemaker, in equal shares, and appointed them executors of the will without bonds. On September 28, 1900, said will was admitted to probate in the Probate Court of Cook county, Illinois, and letters testamentary were issued to said widow and son. Notice to creditors was duly published, fixing the November term, 1900, as the time for the presentation of claims. No claim was at any time presented or filed in said Probate Court by Union Trust Company, appellee, or by its assignor, against the said estate, and no suit was brought by either of them against said executors, prior to the date of their discharge as executors. On February 18, 1901, said executors filed an inventory of the estate which disclosed that Walter Shoemaker at the time of his death was possessed of certain real estate in the village of Ridgeland, Illinois, of the estimated value of $1,000; an undivided one-half interest in certain real estate located in the State of South Dakota, of unknown value, the other undivided one-half interest being owned by A. D. Marriott, who was a partner of deceased in the firm known as A. D. Marriott & Co, of Omaha, Nebraska, and personal estate of the

estimated value of about $95,000. In the enumeration of this personal estate was mentioned "an undivided one-half interest in the copartnership of A. D. Marriott & Co." of estimated value of $50,000. On March 19, 1901, said executors filed a petition for leave to sell to said Marriott the deceased's undivided one-half interest in said real estate in South Dakota and the undivided one-half interest in the said firm of Marriott & Co. for the sum of $55,000 in cash, said Marriott having agreed to save the estate of the deceased harmless from all liabilities on account of said firm of Marriott & Co. It appears that subsequently to the filing of this petition and before the executors were discharged, Elizabeth Shoemaker and Charles W. Shoemaker, personally, each received one-half of the sum of $2,500, which was the proceeds of the sale of the deceased's undivided one-half interest in said South Dakota real estate. On September 22, 1904, said executors filed a report in said Probate Court showing that on or about April 2, 1901, they sold to said Marriott & Co. the entire undivided one-half interest of said decedent in said copartnership of Marriott & Co. for the sum of $50,000 in cash, that said Marriott had assumed and agreed to pay all claims and obligations against said firm of Marriott & Co., and that said sale had been made in accordance with said order of the Probate Court of March 19, 1901. The court approved the report and confirmed the sale. On September 28, 1904, the final account of said executors was filed and approved and they were discharged, the widow and son taking the residue of the estate of the deceased in equal shares. Because of the sale of the deceased's half interest in the partnership assets of Marriott & Co., they each received in personal property an amount in excess of appellee's claim. Although all of the assets of said firm of Marriott & Co. were, at the date of the death of Walter Shoemaker, situated outside of the State of Illinois, no inventory

or account of said copartnership was ever presented to the Probate Court of Cook county, and no proceedings were ever had or taken, either in the State of South Dakota or in the State of Nebraska, or elsewhere outside of the State of Illinois, for the probating of said will.

At the date of the death of said Walter Shoemaker, the following statutory provisions were in force in the State of South Dakota:

"The estate, real and personal, given by will to legatees or devisees, is liable for the debts, expenses of administration and family expenses in proportion to the value or amount of the several devises or legacies, but specific devises or legacies are exempt from such liability if it appears to the court necessary to carry into effect the intention of the testator, and there is other sufficient estate."

"When property is directed by the will to be sold, or authority is given in the will to sell property, the executor may sell any property of the estate without the order of the County Court, and at either public or private sale, and with or without notice, as the executor may determine; but the executor must make return of such sales as in other cases; and if directions are given in the will as to the mode of selling, or the particular property to be sold, such directions must be observed. In either case no title passes unless the sale is confirmed by the court."

"All the property of a decedent, except as otherwise provided for, the homestead and personal property set apart for the surviving wife or husband, and minor child or children, shall be chargeable with the payment of the debts of the deceased, the expenses of administration, and the allowance to the family. And the property, personal and real, may be sold as the court may direct, in the manner hereinafter prescribed. There shall be no priority as between personal and real property for the above purposes."

The revised code of the statutes of South Dakota, published in 1903 under authority of said state, also contains the following statutory provisions:

"Those to whom property is given by will are liable for the obligations of the testator in the cases and to the extent prescribed by the code of civil procedure, or the statutes in such cases made and provided."

"Every person over the age of eighteen years, of sound mind, may by last will dispose of all his estate, real and personal, and such estate not disposed of by will is succeeded to as provided in title 6 of this part, being chargeable in both cases with the payment of all the decedent's debts, as provided in the code of civil procedure and probate code."

"On the death of a partner the surviving partners succeed to all the partnership property, whether real or personal, in trust for the purposes of liquidation, even though the deceased was appointed by agreement sole liquidator; and the interest of the deceased in the ultimate distribution of the partnership assets passes to those who succeed to his other personal property."

The issue in the said replevin suit was still pending and undisposed of when the executors of the will of Walter Shoemaker, deceased, were discharged by order of the Probate Court of Cook county, and his estate distributed. That issue came to trial before a jury in December, 1905, and on December 22, 1905, the jury rendered a verdict in favor of the defendants and against the plaintiffs therein, and by their verdict found that the entire interest of said Stubbings in said replevied property had, for value received, been sold and assigned to the appellee herein, and that it was the owner thereof and as such entitled to the benefit of any recovery had in said action by the defendants therein, and that the remaining defendants were only nominal parties thereto. The defendants in said suit having waived, in accordance with the provisions of the Michigan statutes, the return of said replevied property, and having elected to take judgment for the value thereof, the jury, under the direction of said court, assessed the damages of appellee herein at the sum of $39,381.48, together with costs to be taxed. At the time of the commencement of said replevin suit,

the following statutory provisions were in force in the state of Michigan:

"If the property specified in the writ shall have been delivered to the plaintiff and the defendant recover judgment by discontinuance or nonsuit, such judgment shall be, that the defendant have return of the goods and chattels replevied, unless he shall elect to waive such return, as hereinafter provided; and also that he recover the damages sustained by him by reason of the detention of such goods and chattels, which damages shall be assessed by a jury in the proper court."

"Whenever the defendant shall be entitled to a return of the property replevied, instead of taking judgment for such return, as above provided, he may take judgment for the value of the property replevied, in which case such value shall be assessed on the trial, * * * "

"If any writ of return, or other execution, issued in favor of the defendant in the action, shall be returned unsatisfied in whole or in part, such defendant or his representatives may have an action upon the bond executed by or on behalf of the plaintiff, to recover against the obligors therein the value of the property replevied, and the moneys, damages and costs awarded to such defendant, and such bond shall be assigned to such defendant or his representatives, on their request."

"In such action the plaintiff shall assign breaches of the condition of such bond, as in other cases, and the return of the sheriff to the execution issued in the action of replevin, shall be evidence of such breach; the amount recovered in such action of replevin, and remaining uncollected, shall be the measure of damages, if the value of the property replevied shall have been so recovered, * * *."

On December 29, 1905, the court entered judgment on said verdict that the Union Trust Company "do recover against the said plaintiffs, Edgar R. Van Buren and Charles D. Bull, surviving partners doing business under the firm name of the Antigo Lumber

Company, the sum of $39,381.48, so assessed as afore-
said, * * * together with the costs and charges
by them * * * expended, to be taxed, and that
said defendants have execution therefor." Said costs
were taxed at the sum of $63.50; execution was issued
on said judgment, which, on March 5, 1906, was re-
turned by the sheriff as wholly unsatisfied, and there-
upon, in pursuance to the Michigan statutes, said re-
plevin bond was duly assigned by the sheriff to the
appellee herein, and at the time of the filing of the
bill herein appellee was the owner of said replevin
bond. By the terms of the written assignment thereof,
Union Trust Company, its successors or assigns, were
authorized and empowered, in the name of the sheriff
or otherwise, but at their expense, "to ask, demand,
sue for, collect, recover and receive of and from the
obligors named in said bond such sum or sums of
money as now are or may hereafter become due
thereon or under and by the terms thereof." No part
of the amount of said judgment having been paid, ap-
pellee filed this bill.

While the bill was pending and during the month
of October, 1907, Elizabeth Shoemaker died leaving
a last will, which was admitted to probate in the Pro-
bate Court of Cook county, Illinois, May 18, 1908, and
which, after providing for certain legacies, devised
and bequeathed unto said Charles W. Shoemaker the
residue of her estate, and appointed him the executor
of the will. Letters testamentary were issued to him,
and, her death being suggested of record in this cause,
he, as such executor, was made a defendant to this bill
in her stead. On or about November 7, 1907, appellee
received from said Plumer and Alexander, the sureties
on said replevin bond, the sum of $25,000 in consider-
ation of their being released from all liability on said
bond. Appellee, however, at the time of the receipt
of said money, expressly reserved all rights and claims
against the principals on said bond. Contempora-
neously with the payment of said sum of money, and

in partial consideration of their release as sureties on said bond, the sureties executed an assignment to Frederick H. Rawson, of Chicago, Illinois, of all their right and claim against the estate, devisees or property of Walter Shoemaker, deceased, Edgar R. Van Buren and Charles D. Bull, jointly, or severally, personally, or as formerly trading under the name of Antigo Lumber Company, or otherwise, arising or resulting from said payment of $25,000 by reason of their liability upon said bond. By a statute of Michigan, enacted in 1903, interest at the rate of five per cent. per annum is recoverable upon all judgments for the recovery of money to be collected on execution. The judgment recovered by appellee herein against the defendants in said replevin action, together with interest at said rate from the date of the judgment to the day appellee received said payment from said sureties, amounted (according to the figures of the master in chancery and to which no objection is raised) to the sum of $43,115.63. Deducting therefrom the $25,000 so paid, the amount remaining unpaid on said judgment on November 7, 1907, is $18,115.63.

On January 24, 1908, the said Edgar R. Van Buren, in the United States District Court for the Northern District of Illinois, Eastern Division, procured an order of discharge in bankruptcy, which order was entered over the objection of appellee made in said court.

The master in chancery to whom this cause was referred to take evidence and report his conclusions thereon as to the law and the facts, made an exhaustive report setting forth the facts substantially as above stated and also his conclusions of law. Upon the hearing before the master, appellee offered in evidence a duly authenticated copy of the record in the replevin suit, to the introduction of which counsel for appellants objected, and the ruling was reserved, but

the same was finally admitted and considered by the master. This copy of the record in said replevin suit is not contained in the transcript of the record brought to this court, it having been omitted *per praecipe.*

The master's conclusions of law were, substantially, (1) that, under the Michigan statutes, the obligation resting upon the plaintiffs in said replevin suit, in case they were unsuccessful in the suit and the defendants waived return of the replevied property, to submit to a judgment for its value as might be assessed upon the trial, was a partnership obligation; (2) that, upon the death of Walter Shoemaker, the pending replevin suit did not abate, nor was it necessary for his executors to be substituted as party plaintiffs, but the suit was properly revived and prosecuted by his surviving partners; (3) that, in the absence of bad faith on the part of the surviving partners, their acts as such in general, and the result of the replevin suit continued by them in particular, are binding upon the legal representatives of Walter Shoemaker, as regards the latter's interest in the partnership property, but not as regards his individual estate, and that the judgment as such in the replevin suit does not bind the executors of Walter Shoemaker, as regards the property administered by them,—none of the partnership property of the Antigo Lumber Company, nor any interest of Walter Shoemaker therein, having been brought under administration by them; (4) that, nevertheless, the question remains whether the Union Trust Company, as assignee of the replevin bond, has a claim against the individual estate of Walter Shoemaker, arising from a breach of the conditions of that bond,—an execution upon the judgment in the replevin suit having been returned unsatisfied, and the condition of the replevin bond being that if the plaintiffs should prosecute to effect their replevin suit, and if the defendants therein should "recover judgment against the said plaintiffs in the said action, then if

the said plaintiffs  *  *  *  shall pay the defend-
ants all such sums of money as may be recovered by
the said defendants against them in the said action,"
then the obligation was to be void; that the argument
of counsel, that the condition of the bond was not
broken because the judgment in the replevin suit was
recovered only against the two surviving partners and
not against all three, proves too much because, if car-
ried to its logical conclusion, it would lead to the ab-
surd result that the bond could not be sued upon even
as against the surviving plaintiffs or the sureties, and
the ultimate value and efficiency of any replevin bond
would be destroyed by the death of any one of several
replevin plaintiffs; that the condition of the replevin
bond, reasonably construed, refers to a judgment not
against each of the original plaintiffs, but against the
plaintiffs as a class, and, as plaintiffs were suing as
a partnership and a judgment was recovered against
the partnership which was not paid, the condition of
said bond was broken; that this conclusion is borne
out by the language of the Michigan statute which pro-
vides: "If any writ or return, or other execution, is-
sued in favor of the defendant in the action, shall be
returned unsatisfied in whole or in part, such defend-
ant or his representatives may have an action upon
the bond executed by or on behalf of the plaintiff, to
recover against the obligors therein the value of the
property replevied, and the moneys, damages and
costs awarded to such defendant, and such bond shall
be assigned to such defendant or his representatives,
on their request;" and that, therefore (the master
concludes), although the replevin judgment, as such,
cannot be enforced against the individual estate of
Walter Shoemaker, the fact of its recovery, together
with the facts that the replevin plaintiffs failed to
pay the same and that an execution issued thereon was
returned wholly unsatisfied, constitute such a breach
of the condition of said bond as to form the basis of

a valid claim on the part of the assignee of said bond against the estate of Walter Shoemaker, deceased, and if such claim had become fixed, and had been presented in the Probate Court of Cook county pending the administration of said estate and within the period fixed by the Illinois statute, it would have had to have been allowed; (5) that the contention of counsel, that the claim was not contingent during the two years following the granting of letters testamentary on the will of Walter Shoemaker, is not sound; that the claim during said period was a purely contingent one, for the reason that the breach of the condition of the bond did not occur, and the cause of action arising thereon did not accrue, and the claim did not become fixed, until several years after the settlement of the estate; that the rule, that although a claim against a decedent's estate be contingent during the statutory period from the granting of letters, and therefore cannot be presented to the Probate Court during that period, is nevertheless barred by section 70 of chapter 3 of the Illinois statutes, except as to property discovered and inventoried subsequently to that period, refers only to suits brought or claims made against executors or administrators as such; that the manifest reason for this bar is that, when the statutory period for the filing of claims has expired, it is the right and duty of the administrator or executor to pay the claims allowed and to distribute the net personal assets, remaining in his hands, among the parties entitled thereto by the statute of descent or by the provisions of the will, and, hence, the law protects the administrator or executor, except as to after discovered property, against claims not filed within the statutory period, no matter whether the claim was fixed and could have been asserted during such period, or was merely contingent and could not have been so asserted, but the reason for the bar of the statute ceases, and said bar has no application, when a remedy is pursued

other than against said administrator or executor as such; that, although the common law remedy against an heir, to the extent of the real estate descended and not aliened prior to suit, when the claim arises upon a specialty which expressly binds the heirs, is not effected by the bar of the statute above referred to, this remedy at law is not available in the present case, because the real estate in this case passed by devise and not by descent; that it would also appear that an action under the provisions of sections 10 to 13 of the Illinois statutes in relation to "Frauds and Perjuries," at least where the claim was contingent during said statutory period, is not affected by the bar under consideration; that this legal remedy, however, is likewise not available in the present case, because it applies only to the extent of real estate descended or devised, and then only if the personal estate of the deceased is insufficient to discharge the debts,—the contrary of which appears to be the fact in the present case; (6) that the situation, then, is this (the master concludes) that the demand of the Union Trust Company, arising from the breach of said replevin bond is a valid debt of the estate of Walter Shoemaker, deceased, so much so that, had it ripened into a present demand and been presented for allowance in said Probate Court during the statutory period, it would have had to have been allowed; that, as it did not ripen into a present demand until years after the expiration of said period, and after the distribution of the estate, it could not be and was not presented to said Probate Court; that the Union Trust Company, therefore, has no claim against the executors, as such, nor are there any other legal remedies available to it; that the executors, however, collected personal property largely in excess of all debts allowed against the estate; that they took the legal title to all the personal property charged with a trust, first, to pay the debts of the decedent, and, second, to distribute

the remainder among the legatees; that, at the time
of the distribution, there existed the contingent and
therefore unprovable debt of the estate to the Union
Trust Company; that, hence, the distributees received
this personal property charged with a trust to pay
this debt if and when it became a fixed debt of the
estate; that said distributees were, therefore, jointly
liable for the amount of the unsatisfied balance of the
claim of the Union Trust Company; that the liability
of distributees for the debt of their ancestor or testa-
tor is joint, the liability of each being limited, how-
ever, to the amount he or she has received and that in
this case each of the distributees has received more
than the total claim of the Union Trust Company.

The master recommended the entry of a final de-
cree finding the facts in conformity with the findings
of fact made by him, and decreeing that appellee have
and recover from the defendants, Charles D. Bull and
Charles W. Shoemaker, individually, and from Charles
W. Shoemaker, as executor of the last will of Elizabeth
Shoemaker, deceased (to be paid in due course of ad-
ministration of her said estate), the sum of $18,115.63,
with interest at the rate of five per cent. per annum
from November 7, 1907, to the date of the entry of the
decree of the court, together with costs to be taxed,
and that appellee have execution against said Charles
W. Shoemaker and said Charles D. Bull therefor.

Objections to the findings of the master were filed
by appellants and also by Charles D. Bull, which ob-
jections were overruled, and upon his report being
returned into the Circuit Court, an order was entered
that the objections filed before the master stand as
exceptions. No objections or exceptions to said re-
port were filed by appellee.

The exceptions of appellants were overruled by the
chancellor and a decree was entered in favor of ap-
pellee, on March 24, 1910, finding the facts substan-
tially as above set forth and directing that appellee

"have and recover from the defendants, Charles D. Bull and Charles W. Shoemaker, individually, and from Charles W. Shoemaker, as executor of the last will of Elizabeth Shoemaker, deceased (as against said Charles W. Shoemaker, as executor, the same to be paid in due course of administration of the estate of said Elizabeth Shoemaker, deceased), the sum of $20,276.66," together with costs to be taxed and that appellee have execution against said Charles W. Shoemaker and Charles D. Bull therefor, and decreeing that each of said defendants "is severally liable for the total amount so adjudged," that the cause be dismissed without costs, as against the defendant Edgar R. Van Buren, and without prejudice as against Charles W. Shoemaker, as surviving executor of the last will of Walter Shoemaker, deceased, it appearing that all assets which came into the hands of the executors of said last will have been heretofore accounted for, and paid over, under the orders of the Probate Court of Cook county.

John T. Richards, for appellants.

Kraus, Alschuler & Holden, for appellee; M. M. Riley, of counsel.

Mr. Presiding Justice Gridley delivered the opinion of the court.

In urging this court to reverse the decree of the chancellor, counsel for appellants contends: *First*. That the judgment in the replevin suit against the surviving partners of the Antigo Lumber Company does not constitute proof of the existence of a debt so as to charge the heirs or devisees of the deceased partner, Walter Shoemaker, as to his individual estate, and, therefore, the transcript of said judgment should not have been admitted in evidence.

Counsel says that although the master found that the judgment, as such, in the replevin suit, did not

bind the individual estate of Walter Shoemaker, the master nevertheless held that the same was competent to establish a liability under the replevin bond, for the reason that in the execution of said bond Walter Shoemaker and his coplaintiffs in said suit severally bound themselves to "pay the defendants all such sums of money as may be recovered by the said defendants against them in the said action," and that, although no judgment was obtained against the deceased partner or his estate, the obligation of Walter Shoemaker under the bond was to pay the judgment recovered in the suit in which the bond was given. And counsel contends that the master's conclusion is wrong and that the court, in adopting the report of the master in this particular, and in entering the decree, committed error. Counsel urges that Walter Shoemaker did not fail to prosecute the replevin suit to effect, and as no judgment was rendered against him or his representative, therefore, as to him, the condition of the replevin bond was not broken; that, he having been prevented by death from prosecuting the suit to effect and the suit as to him having abated, the replevin suit was in the same condition as to his estate as if it had been dismissed for want of prosecution, and, before his estate could be held liable on the bond, the value of the property replevied would have to be proven in a separate suit, and in that suit his legal representatives would have the right to make every defense,—in other words, to have their day in court; that it would impose great injustice upon the estate of the deceased partner not to allow his executors or distributees to show that the replevied property had little or no value and to force them to be bound by the judgment rendered against the surviving partners; that in a trial of a separate suit on the bond, his executors or distributees would be entitled to invoke the rule preventing the introduction of certain testimony because of his death,—testimony which

would be competent as against his surviving partners; that while the surviving partners were the proper representatives in the replevin suit of the interests of the deceased partner as to the partnership property, they were not his representatives as to his individual estate; that, as the bond was a joint and several bond, and as it devolved upon said surviving partners under the bond to prosecute the replevin suit to effect, and as they failed to do so and also failed to pay the judgment, there can be no question but that they as principals are liable on said bond, and that the sureties are also liable to pay the amount of the judgment, but that said judgment cannot bind the individual estate of the deceased partner; that there was no privity between the surviving partners and the executors of the deceased partner, and no one can be bound by a verdict or judgment unless he be a party or privy; and that if a judgment against a surviving partner should be held sufficient evidence to charge the estate of a deceased partner, it would throw open the door to all manner of frauds and deceptions, which it would be difficult to detect and expose. To all of this counsel for appellee reply that, while the master's conclusion of law was correct that the devisees of Walter Shoemaker were to the extent of the property received by them bound, in a proceeding in equity, to pay such judgment under the replevin bond given by him, the master's conclusion of law that the judgment, as such, was not enforceable as a legal obligation against the individual estate of Walter Shoemaker, deceased, was erroneous; that the above contentions of counsel for appellants when applied to the facts in this case are unsound, and the judgment and record in the replevin suit were properly allowed in evidence, because of the contractual obligation, under the bond, of Walter Shoemaker, "his heirs, executors and administrators," to pay "such sums of money as may be recovered by the defendants" in the replevin suit;

that at his death the replevin suit did not abate but was properly and necessarily carried on by the surviving partners on behalf of all; that Walter Shoemaker joined in the commencement of the suit as a copartner, and, by that act as well as by his several obligation on the bond, bound himself and his heirs with respect to the prosecution to effect of said suit and the payment of any judgment as might be rendered therein. After careful consideration we are of the opinion that, by reason of the condition of the replevin bond and the provisions of the Michigan statutes and under the pleadings and facts in this case, the fact of the rendition of said judgment constitutes such a breach of the condition of the bond as forms the basis of a claim in equity on the part of appellee, the assignee of said bond, against appellants, and that the transcript of said judgment was properly admitted in evidence and considered by the court.

*Second.* It is contended by counsel for appellants that the bill in this case seeks to reach property which cannot be reached by execution and is, therefore, in the nature of a creditor's bill, and that in order to maintain such a bill the claim, notwithstanding that a judgment may have been recovered thereon in a foreign jurisdiction, must be reduced to judgment in this state before the jurisdiction of a court of equity will attach. We see no merit in the contention. Counsel says that the bill in this case seeks to subject the property received by appellants, as distributees under the will of Walter Shoemaker, a deceased partner, to the payment of appellee's claim. "In equity all partnership debts are to be deemed joint and several; and consequently the joint creditors have in all cases a right to proceed at law against the survivors, and an election also to proceed in equity against the estate of the deceased partner, whether the survivors be insolvent, or bankrupt, or not." (Story on Partnership, Sec. 362.) "Every partnership debt being joint and

several, it follows, necessarily, that resort may be had in the first instance, for the debt, to the surviving partners, or to the assets of the deceased partner.'' (Mason v. Tiffany, 45 Ill. 392, 395; Doggett v. Dill, 108 Ill. 560; Nelson v. Hill, 5 How. (U. S.) 127, 133.) And in equity the surviving partners are proper parties defendant to the bill. Nelson v. Hill, *supra.*

*Third.* It is also contended by counsel for appellants that the claim of appellee, which he says was for the value of the lumber replevied, was not contingent during the two years following the issuance of letters testamentary to the executors of the will of Walter Shoemaker by the Probate Court of Cook county; that appellee, therefore, had the right to proceed against said executors at any time during said two years, and not having done so, said claim is barred by the provisions of section 70 of chapter 3 of the Illinois statutes (in force at the time of the issuance of said letters), except as to the property not inventoried or accounted for, and that, even though it be held that said claim was contingent during said period and did not become fixed until the rendition of the judgment in said replevin suit, nevertheless the claim is barred under the provisions of said statute, in this equity proceeding, as against the heirs, devisees and legatees of Walter Shoemaker, deceased.

We do not agree with counsel in his contention that appellee's claim was not contingent. We think it was contingent during all of said period and for more than one year after said executors were discharged. They were discharged on September 28, 1904, and the judgment in the replevin suit was not rendered until December 29, 1905, and until that judgment was rendered it was uncertain in whose favor the litigation would be decided. In the event of the judgment being in favor of the plaintiffs, there would be no liability of the obligors on the bond. A breach of the condition of the bond did not occur, or any cause of action

therein in law or in equity accrue to appellee, or appellee's claim become a definite and fixed one, until said judgment was rendered in favor of appellee. Where an obligation is an absolute one, although not yet due, it is not contingent, but where the very existence of an obligation depends upon some future undetermined event it is contingent. Stone v. Clarke's Admr., 40 Ill. 411; Dunnigan v. Stevens, 122 Ill. 396; Mackin v. Haven, 187 Ill. 480, 495; Pearson v. McBean, 231 Ill. 536. The obligee in a replevin bond does not become a creditor of the obligor until the termination of the replevin suit by judgment against the plaintiff for a return of the property, or, as happened in this replevin case, by the waiver of such return as provided by the Michigan statutes, for the value of the property. Suppiger v. Gruaz, 137 Ill. 216, 220.

Nor do we agree with counsel in his contention that, even though it be held that said claim was contingent during said period and until the rendition of said judgment, the same is barred under the provisions of said statute, in an equity proceeding, as against the heirs and devisees of Walter Shoemaker, deceased. Section 67 of chapter 3 of our statutes provides:

"Any creditor, whose debt or claim against the estate is not due, may, nevertheless, present the same for allowance and settlement, and shall, thereupon, be considered as a creditor under this act," etc.

At the time of the granting of the letters testamentary to the executors of the will of said Walter Shoemaker, the seventh paragraph of section 70 of said chapter of our statutes provided:

"All other debts and demands, of whatever kind, without regard to quality or dignity, which shall be exhibited to the court within two years from the granting of letters as aforesaid, and all demands not exhibited within two years, as aforesaid, shall be forever barred, unless the creditors shall find other estate of the deceased, not inventoried or accounted for by

the executor or administrator, in which case their claims shall be paid *pro rata* out of such subsequently discovered estate, saving, however, to infants,'' etc.

It has been held by our ·Supreme Court that said section 67 does not apply if the obligation is merely a contingent one, and that if a claim, which is contingent during all of said two-year period, is presented to the Probate Court for allowance it cannot be allowed, and that. the only effect of the provision, embodied in section 70, above quoted, is to bar any action. *against the administrator or executor.* Mackin v. Haven, 187 Ill. 480. In this Mackin case an action at law was begun originally before a justice of the peace against the heir of a deceased person to recover an amount due at the time of the commencement of the action, under a lease and party wall agreement under seal, executed by said deceased as lessee during his lifetime. The claim was not presented against the estate of said deceased within two years after the issuance of letters of administration, and it was contingent during all of that period. Our Supreme Court said (p. 494-5):

''In construing section 67 of chapter 3 in regard to 'Administration,' as to the matters above quoted, we held in Dunnigan v. Stevens, 122 Ill. 396, that, if the obligation is an absolute undertaking, the claim can properly be proved against the estate in the Probate Court, even where the debt or claim is not due, but that, if the obligation is merely a contingent liability, then the claim is not properly provable in the Probate Court, and cannot be allowed. In Stone v. Clarke's Admr., 40 Ill. 411, where the claim filed was based upon an indemnifying bond made by Clark, under which no damage resulted to Stone until more than two years after letters of administration were granted, it was held that Stone had no claim until he was damnified, and, as he was not liable on the notes and suffered no damage until after the lapse of the two years, his claim had not accrued within two years, and no suit could have been instituted within the two years.

In the case at bar, the lease or party wall agreement provides, that the premises are to be held by Thomas Mackin from August 1, 1872, until August 1, 1902, 'if the said wall, one-half of which is upon the premises hereby demised, shall stand so long. This lease to be immediately determined by a total destruction of said wall.' It thus appears that, until August 1, 1896, arrived, it could not be determined whether the wall might not be totally destroyed, or whether the lease might not be determined by failure to pay the rent, or what amount of rent would be due on that day; for, at any time, the representatives of the Haven estate might see fit to use some portion of the wall erected by Mackin under the terms of the lease, and, in such case, deduction would be required from the amount of the rent. The payment of rent under this lease was, therefore, dependent and conditioned upon the happening, or not happening, of certain events. If the claim had been presented to the Probate Court during the two years for the rent due August 1, 1896, it would have been a sufficient answer thereto to say, that the rent was only payable upon a contingency.

The only effect of the provision of the statute, embodied in section 70 of chapter 3, as above quoted, is to bar any action against the administrator or executor, unless the claim is filed within the two years' except as to assets not inventoried. Snydacker v. Swan Land and Cattle Co., 154 Ill. 220.''

In the later case of Pearson v. McBean, 231 Ill. 536, which was also an action at law, that portion of the Stone case, above referred to in the Mackin case, was cited with approval.

But counsel contends that the master's conclusion of law in this case (viz., that the bar of said section 70 refers only to suits brought or claims made against executors or administrators as such) is untenable, notwithstanding the decision in the Mackin case, *supra,* because of the decisions of our Supreme Court in the Stone and Pearson cases, *supra,* and in People v. Brooks, 22 Ill. App. 594, aff'd 123 Ill. 246, Snydacker

v. Swan Land and Cattle Co., 154 Ill. 220, and Morse
v. Pacific Ry. Co., 191 Ill. 356. In the Stone case,
as stated in the above quotation from the Mackin
case, the claim filed was based upon an indemnify-
ing bond made by Clark, under which no damage re-
sulted to Stone until more than two years after the
granting of letters, and it was held that, the claim
not having accrued within the two years, no suit could
have been or was instituted during that period; but the
court further held that "consequently Stone's claim
was barred, except as to future discovered property."
The claim in this Stone case was filed in the County
Court and, in accordance with the probate practice
then in force, a summons was issued to the adminis-
trators to appear and defend, and upon the trial the
court allowed the claim for a certain sum, but, it ap-
pearing that the same was not presented within said
two-year period, ordered that it be paid out of prop-
erty not inventoried or accounted for. The Pearson
case was an action of *debt* commenced in the Superior
Court of Cook County by the executors of James H.
Pearson against the executors of Duncan S. McBean
to recover the sum of $5,000, which had been paid by
Pearson to McBean on May 18, 1897, in consideration
of the assignment by McBean to Pearson of a judg-
ment in favor of Ida E. Schmidt against the City of
Chicago, which assignment had been set aside by or-
der of court on June 13, 1902. McBean had in the
meantime died and letters testamentary were issued on
his estate on June 10, 1898. The plaintiffs in said ac-
tion of debt sought to avoid the bar of the statute on
the ground that their claim was contingent up to June
13, 1902, the date when the order setting aside the as-
signment of the judgment was entered, but the court
held that even to this contingent claim the statute was
a bar. The court quoted with approval from the Stone
case, and said that that case had been approved in the
Snydacker and Morse cases, *supra,* and "must be held

to be the settled law of this state," and that the cases of Dugger v. Oglesby, 99 Ill. 405, and Suppiger v. Gruaz, 137 Ill. 216, "were reviewed in the Snydacker case * * * and to the extent that they were in conflict with the Stone case they were overruled." The Mackin case was not mentioned in the opinion, although cited in the brief of counsel for the unsuccessful litigants.

We do not think that the Stone and Pearson cases are at variance with that part of the opinion in the Mackin case which says that the only effect of said Section 70 "is to bar any action *against the administrator or executor,* unless the claim is filed within the two years, except as to assets not inventoried." In the Stone case a claim was filed against the administrators, and in the Pearson case an action at law was commenced against the executors. Neither do we think where, as in the present case, the executors were discharged and the estate distributed before the contingent claim of appellee herein became fixed by the judgment, and before appellee had an opportunity of presenting or bringing suit upon his claim, that the Stone and Pearson cases can be considered as supporting counsel's contention that the provisions of said Section 70 constitute a complete bar in a proceeding in equity to appellee's claim against the heirs and devisees of Walter Shoemaker, deceased. In our opinion that question was not passed upon in those cases. But in the case of Ryan v. Jones, 15 Ill. 1, it was held that the *heirs and devisees could not rely upon this limitation.* The action was in *debt,* brought by Ryan against John T. Jones, as executor and devisee of Michael Jones, who averred that defendant was the devisee of certain real estate fraudulently devised to him by the deceased. On demurrer to the declaration, the trial court held that the action could not be maintained against defendant in his character of executor and devisee, and sustained the demurrer, and the Su-

preme Court said that this ruling was erroneous and reversed the case. The court said that the case called for a construction of some of the provisions of the then existing statutes in relation to "frauds and perjuries" (which were identical with Sections 10, 11, 12, 14 and 15 of our present statutes) and that those provisions must be construed with reference to certain provisions contained in Section 115 of the then existing statute on wills (which were practically the same as were contained in said Section 70 of Chapter 3 of our statutes in force when letters were granted to the executors of Walter Shoemaker), and the court further said (p. 5): "Demands against the estate of a deceased person must be exhibited within two years from the grant of administration. * * * In joint actions under the statute, the executor or administrator may insist upon this limitation of two years; and if he does so successfully, the plaintiff must take judgment against him to be satisfied out of the newly discovered estate. But the heirs and devisees cannot rely upon this limitation. They may insist upon the general statute of limitations; and, if successful, may wholly defeat a recovery against them." In Waughop v. Bartlett, 165 Ill. 124, 128, it is said: "The section of the statute relating to the presentation of claims against the estate of a deceased person is not a general statute of limitations taking away all remedy, both personal and against the property of a person deceased. It is a specific act, adopted for the particular purpose of facilitating the early settlement of estates." In Dugger v. Oglesby, 99 Ill. 405 (which is one of the cases which, as said in the Pearson case, was overruled in the Snydacker case to the extent that it was in conflict with the Stone case) it was held that, in an action for the breach of covenants in a deed brought against the administrator and heirs of the covenantor, where the claim was contingent and not presented in the Probate Court during the said two-

year period, the provisions of said Section 70 were not a bar to the action *available to the heirs*. The court said (p. 410): "Another objection made to a recovery is, that the claim was not filed against the estate of Dugger within the two years after the grant of administration. Letters of administration were taken out in 1869, and the claim now sued was never filed against the estate. * * * All the property, both real and personal, belonging to the estate, was inventoried by the administrator, so that there are no subsequently discovered assets. The eviction did not take place until in 1874. Thus the cause of action here did not in fact accrue until long, and more than two years after * * * the granting of letters of administration and the settlement of his estate. The cause of action here is not a demand which could have been exhibited to the court, proved or allowed * * * any time within two years after the granting of administration on his estate, it not accruing until afterwards. We are of the opinion that the limitation of the statute does not apply to the case."

In the Snydacker case (154 Ill. 220), an action in *assumpsit* was begun against the administrator of a deceased person to recover money claimed to be due and owing, by reason of calls made, on stock of a corporation owned by said deceased during his lifetime and which was not fully paid. The assessment by the corporation was not made until after the expiration of said two-year period for presenting claims. It is to be noticed that this action was against the administrator solely. To the declaration the administrator filed a special plea to the effect that plaintiff within said two-year period did not exhibit any claim and that the same was forever barred, except as to subsequently discovered assets. The court, in holding that the plea was good, said (p. 222):

"The plea was interposed to a declaration filed in a suit commenced March 21, 1890, and seeks a recovery against the estate of the deceased, and is not prose-

cuted against the heirs under the provisions of Chapter 59 of the Revised Statutes, entitled 'Frauds and Perjuries.' * * * It is strenuously insisted by the counsel for appellee that Stone v. Clarke's Admrs. was overruled by the case of Dugger v. Oglesby, 99 Ill. 405, * * * and counsel also cite Payson v. Haddock, 8 Biss. 293, as establishing a rule inconsistent with that in Stone v. Clarke's Admrs. The case of Dugger v. Oglesby, *supra*, was brought under the provisions of Chapter 59 of the Revised Statutes, making the widow and heirs parties, and averring the descent of property, etc. * * * The questions involved are wholly dissimilar to those in Stone v. Clarke's Admrs.''

And the court, after quoting from that portion of the opinion of the Dugger case, above set forth, said (p. 224): ''Dugger's case in no way controlled or modified Stone's case, which was not alluded to in that opinion.'' And the court said that the case referred to by counsel in Bissell's Reports was similar to Dugger's case, and after quoting from the case in Bissell's Reports, which quotation was in the language of the Supreme Court of New Hampshire in the case of Hall v. Martin, 46 N. H. 337, as follows:

''The general principle laid down is this: That the heir is liable, to the extent both of the personal and real estate received from his ancestor, for the contracts or liabilities of the ancestor, and that where these claims have not accrued until after the administration of the estate is closed, suit may be brought and maintained against the heir to the extent of such assets which he derived from the ancestor. At common law the heir was not liable for the debts of the ancestor except upon covenants or bonds under seal, where the heir was specially named, and in those cases only to the extent of the real estate, because he only received real estate by descent;'' the court said (p. 226): ''And the court holds that in such a suit the bar of the statute of two years is held not to apply in actions against the heir. It is the same principle as held in Dugger's case. What has been said in the discussion of the foregoing cases is not intended to qual-

ify or modify anything held in People v. Brooks, 123 Ill. 246.''

In the case of Morse v. Pacific Ry. Co., 191 Ill. 356, a bill in equity was filed by Morse against the company and its stockholders, under Section 25 of the corporation act, seeking to enforce the statutory liability of stockholders. One of the stockholders answered the bill and afterwards died leaving a will; his will was probated and letters testamentary issued to the executors, but his death was not suggested of record, and the executors were not made parties defendant, in said equity suit, and no claim was filed in the Probate Court or suit commenced against his estate before the expiration of said two-year period. After the expiration of more than six years after the granting of said letters testamentary, a bill of review was filed making said executors defendants, to which bill the executors set up the bar of the statute, and the court held that, inasmuch as the liability of the estate existed before the testator's death, the claim of complainant was not a contingent one during said two-year period, and that the statute was a bar, except as to assets not inventoried or accounted for. It is to be noticed that the facts in this Morse case are different from those in the Dugger case, in that the suit was against the executors on a claim held not to be contingent during said two-year period, while in the Dugger case the action was against the heirs and administrator on a claim which was contingent during all of said period. Our Supreme Court in this Morse case, in commenting on the Dugger case, said (p. 363) : ''That suit was by a subsequent grantee against the heirs-at-law and administrator of Dugger for a breach of covenants contained in a deed executed by Dugger and wife. The cause of action did not accrue until more than two years after the granting of letters. The court said the limitation in question did not apply, *and that was correct as to the suit against the heirs.* It was in fact applied in that case as to the administrator.''

The case of People v. Brooks, 22 Ill. App. 594, and affirmed in 123 Ill. 246, also relied upon by counsel in support of his contention, was an action of *debt* on a guardian's bond, brought by the people, for the use of Stanley B. Sexton, the ward, against Jane A. Brooks, the widow and heir at law of Joseph P. Brooks, one of the sureties on said bond. Joseph P. Brooks died on June 28, 1873, and on July 17, 1873, his will was admitted to probate and letters testamentary were issued to the defendant and another person. On June 23, 1874, the defendant, as widow of the deceased, filed her renunciation of all benefit of any legacy under the will and her election to take in lieu thereof her dower and legal share of the estate of her husband. On August 25, 1874, said Sexton arrived at his majority. The final settlement of the estate of the deceased was made on November 24, 1875, and the estate, consisting entirely of personalty, was paid over to the defendant. No claim against the estate was filed in the Probate Court at any time by or on behalf of said Sexton. This court held that by the condition of the bond, Curtis, the guardian, obligated himself, at the expiration of his trust, to settle his accounts in the Probate Court, or with the ward; that the trust expired the instant the ward attained his majority; that a failure to make such settlement was a breach of the bond, and that the ward was entitled to bring his action against the sureties on the bond at once; that, under said Section 70, he had two years from the date he reached his majority to present his claim to the Probate Court, and his failure so to do was a bar to the action. This court said (22 Ill. App. 600) : "Creditors will not be permitted to lie by and remain silent during the course of the administration, and then seek to follow personal property into the hands of the heir or other distributee, and wrest it from him for the purpose of applying it to their debts. The judgment of the Probate Court, awarding dis-

tribution, is a judgment *in rem*, and is binding on all creditors and others who had an opportunity to be heard.'' This court further said that as there is no statute authorizing suits by creditors against heirs or devisees in respect to personal estate distributed to them, such suits are forbidden, at least by implication, by Section 12 of the statute in relation to ''Frauds and Perjuries,'' and that for that reason, also, the action could not be maintained. This decision was affirmed by the Supreme Court (123 Ill. 246), but the case is to be distinguished from the present case in that the claimant in the Brooks case had an opportunity to present his claim for allowance during the two-year period after his cause of action had accrued, but instead of doing that he ''remained silent'' and did not begin his action against the heir until over six years after the personal estate had been distributed and the executors discharged. In the present case the estate had been distributed and the executors discharged more than one year before appellee's judgment on its contingent claim had been rendered and before it ''had an opportunity to be heard.'' Furthermore, the Brooks case was an action *at law* seeking to reach the personal estate only of the ancestor in the hands of an heir after distribution, while the present case is a proceeding *in equity* to reach both the real and personal estate. Our Supreme Court in the opinion in the Brooks case, stated (p. 248), that by common law the personal estate went to the administrator, and upon him was then devolved the duty of paying the debts, according to their priority; that the only remedy for the payment of debts, because of the personal estate, was against the administrator, the heir, as such, merely, never being liable therefor, because of personal property devised to him from the estate; that the real estate was not liable for the payment of the debts, generally, of the intestate, which descended to the heir directly and which he took free

of any claim of the general creditors; that the ancestor might, by a specialty, bind the heir to the payment of a debt by expressly so declaring in the deed, and the heir was then bound to the extent of the value of the *real estate* coming from the ancestor to the heir by inheritance, but that if the land was *devised,* the creditor had no remedy against the devisee; that if the heir had bona fide aliened the lands which he had by descent, before an action was commenced against him, he might discharge himself by pleading that he had nothing by descent at the time of suing out the writ or filing the bill, and the obligee had no remedy *at law;* that the remedy was enlarged in England by subsequent statutes, which, however, have never been in force here, but that we have had instead legislation of a kindred character; that the point was made in the Brooks case, that, because, by our statute in relation to descents, personal as well as real estate is made to descend to the heir at law, all distinction between real and personal estate, so far as affected the question in that case, was obliterated, and the *common law* action should therefore be held to lie in that case, but that it would seem that the reason why, at common law, an heir could be charged in respect of real estate descending to him, but not in respect of personal property, is not affected by said statute, and for the reason that the title to personal property under said statute is as completely in the administrator, until all debts probated within the time limited for that purpose by the statute are paid, as it was at common law, and that, accordingly the Supreme Court of this state had held that heirs are not, in general, liable for the debts of their ancestor, where the latter leaves personal estate sufficient to discharge all just demands against his estate.    The court then set out portions of the provisions of Sections 11, 12, 14 and 15, of our statutes in relation to "Frauds and Perjuries," and said (p. 251): "Thus the entire question of the liabil-

ity of heirs and devisees for the debts of ancestors and devisors is covered by these sections, and, by a familiar rule of construction, to the extent they enlarge the common law liability it is enlarged, but no further. It is clear the present case falls within neither section." The court then comments upon the Dugger case and the New Hampshire case of Hall v. Martin, both of which cases are, as we have seen, discussed in the more recent Snydacker case. The Brooks case is distinguished in the above-referred-to Mackin case (187 Ill. 494), where it is stated that there is nothing in the Brooks case, so far as the court can discover, which is inconsistent with the decision in Crocker v. Smith, 10 Ill. App. 376. We are of the opinion, in view of the other and later decisions of our Supreme Court above referred to, that the holdings in the Brooks case, at least so far as the bar of said section 70 of chapter 3 of our statutes now under discussion is concerned, should be limited and applied to cases where *personal* estate only is sought to be reached in the hands of an heir or legatee, in an action *at law*, upon a claim which was not contingent during said two-year period and which could have been presented to the Probate Court, or suit brought thereon, within the time prescribed.

*Fourth.* Counsel for appellants further contends that, even if the devisees under the will of Walter Shoemaker are liable to the extent of the value of the real estate which passed to them, they are under no liability as to the personal estate which so passed. This presents the question: To what extent, under the principles governing the granting of relief in equity, will such relief be granted against legatees to enforce the obligations of their testator out of personal property received by them? Counsel argues that by reason of the decision in People v. Brooks, *supra,* a suit at law cannot be maintained against legatees to reach personal estate which has been distributed, and such

a suit will not lie in equity because "equity follows the law." Counsel for appellee argues in reply, inasmuch as a suit at law on a claim against a deceased person (which was contingent during said two-year period and on which no action at law could have been successfully brought during said period and if filed in the Probate Court could not have been allowed) is barred only as against the executor or administrator, and inasmuch as it would appear from the decision in the Brooks case that on such a claim no action *at law,* either under the statutes of Illinois or under the common law, would lie at any time against the legatees of such deceased person, and inasmuch as the statutes of this state, as to proving claims and regulating other proceedings in administration of estates, represent the creation of legal remedies to supersede prior remedies in chancery, and only so far as the old chancery remedies are so superseded are they no longer available, that this is such a case as should strongly appeal to a court of conscience; that one of the most clearly established rights enforceable in equity is that of a creditor of a deceased debtor to follow both personal and real estate passing to his legatees and devisees, and that equity will grant relief not only as against the real estate, but also as against the personal estate. After careful consideration and a review of many cases decided in England, in the courts of this and other states, and in the United States courts, we have reached the conclusion that, under the facts of this case, the chancellor was warranted in entering the decree appealed from.

In Cary's Reports, page 28, a case is reported as decided in England on June 8, 1602, where it was said: "The general trust of an executor is to pay debts and legacies; and of the surplusage to account to the ordinary in *pios usus.*" And in this state it is now the law that the personal estate of a deceased person is a trust fund in the hands of an administrator for the

payment of debts and when the debts are paid the residue belongs to the heir. People v. Brooks, *supra;* Moore v. Brandenburg, 248 Ill. 232, 236. In Noel v. Robinson, 1 Vern. 90-94 (Nov., 1682), the Lord Chancellor said: ''The common justice of this court will compel a legatee to refund. It is certain that a creditor shall compel the legatee to refund.'' In Newman v. Barton, 2 Vern. 205, it was said: ''A creditor shall follow the assets in equity, into whosoever hands they come.'' In 1 Story's Equity Juris., Sec. 92, that author says: ''Legatees are always compellable to refund in favor of creditors; because the latter have a priority of right to satisfaction out of the assets;'' and in Vol. 2, Sec. 1251, the same author states: ''Another illustration of implied trusts may be found in the common case of a suit in equity by a creditor of an estate, to recover his debt from legatees and distributees who have received payment of their claims from the executor (acting by mistake, but *bona fide* and without fault) before a due discharge of all the debts. * * * He has a clear right in equity, in such a case, to follow the assets of the testator into their hands, as a trust fund for the payment of his debt. The legatee and distributee are in equity treated as trustees for this purpose; for they are not entitled to anything, except the surplus of the assets after all the debts are paid.'' Rankin v. Big Rapids, 66 C. C. A. 568, was an equity case arising under the statutes of Michigan which provided that ''Every person having a claim against a deceased person, proper, to be allowed by the commissioners, who shall not, after the publication of notice, * * * exhibit his claim * * * within the time limited * * * shall be forever barred,'' etc., and it was held by the Circuit Court of Appeals, for the sixth circuit, that where a contingent claim against a decedent's estate did not become absolute until long after the two-year period had expired, and until more than a year after

the estate had been finally closed, it was not barred, and that the creditor, though never having filed the claim in the probate proceedings, was entitled to recover thereon in equity from the distributees to the extent of assets distributed to them.  The court said (p. 680) :

"It is unnecessary to go into argument to vindicate the principle of equity to which the complainant appeals.  *  *  *  The legatees ought not to hold as a gift from the estate that which belongs to the creditors.  We appreciate what the learned judge said in delivering the opinion in the court below that 'there ought to be a time when the assets of a deceased person should cease to be impressed with a trust for the payment of decedent's debts, and should become the absolute property of the heirs, devisees, distributees and legatees.'  But the superior rights of creditors are also to be regarded, and, whatever his disappointment, the legatee has no just ground for complaint if the creditor makes his claim within such reasonable time as the law in the circumstances of the case allows him."

The opinion of the court is an exhaustive one in which many cases involving the same question, decided in Michigan, in other states and in the courts of the United States, are either reviewed or cited.  Counsel for appellants seeks to avoid the pertinency of the decision, as applied to the facts of this case, and says that the statute of Michigan, in providing that "every person having a claim against a deceased person *proper to be allowed,*" not filed within a certain limited time shall be forever barred, is "radically different" from the provisions of our statute, which mentions in its classification "all other debts or demands of whatever kind, without regard to quality or dignity," and which provides that "all demands not exhibited" within the time limited shall be forever barred.  In view of the holding in the Mackin case, *supra,* that a demand contingent during the statutory

period could not be allowed if presented, we cannot see any material difference in the language of the two statutes; at least, there is not such a difference as would appeal to a court of equity. Counsel for appellants further contends that there was also a statute in force in Michigan at the time this Rankin case was decided, which provided that "when heirs, devisees or legatees shall have received real or personal estate, and shall be liable for any debts, * * * the creditor may have any proper action or suit in law or equity, and shall have the right to recover his claim against * * * such heirs, devisees and legatees, to the amount of the estate they may have respectively received, but no such action shall be maintained unless commenced within one year from the time the claim shall be allowed or established," and that on account of the existence of the statute the cited case is not pertinent to the present case because no such statute as to legatees exists in Illinois. We think that the decision in said Rankin case was not so much based upon the statute mentioned as upon the principles peculiar to equity jurisdiction.

In Comstock v. Keating, 115 Mo. App. 372, equitable relief was invoked in a case where one of two joint obligors on an official bond had been obliged to discharge the obligation by the payment of a judgment after the death of his co-obligor, and after the time limited for filing claims against the estate of said co-obligor had expired and said estate had been settled. It was held that the paying obligor might proceed in equity against the legatees of his co-obligor and compel a contribution from their distributive shares. The court says (p. 380):

"In these circumstances the question is, Could respondent seek contribution in equity against the legatees of Keating, she being without legal remedy? In other words, Could she follow the assets of the Keating estate into the hands of the distributees? If the respondent's right to contribution had accrued while

the administration of the estate was in progress and she had been remiss in not presenting her demand for probate, likely she would receive no consideration from a court of equity. But she had no opportunity to probate it. Therefore her right to the relief she asks depends, not upon our statutes, but on the general doctrines of equity jurisprudence. It is an old doctrine of equity that creditors, who have not been guilty of laches, may pursue the assets of an estate into the hands of distributees, if the distribution was made without discharging their debts."

In Continental Bank v. Heilman, 81 Fed. Rep. 36, a case arose in the United States Circuit Court for the District of Indiana, in which the effect of a statute of the State of Indiana was called in question, as follows: "That the heirs, devisees and distributees of a decedent shall be liable to the extent of the property received by them from such decedent's estate, to any creditor whose claim remains unpaid, who, six months prior to such final settlement, was insane, an infant, or out of the state; but such suit must be brought within one year after the disability is removed, *provided,*" etc. The court said (p. 42):

"The national courts, upon their equity side, will not only give equitable relief according to the ancient and original jurisdiction of the high court of chancery of England, but will also enforce any new equitable right created by a state statute. The question for solution then, is this: Has the statute of this state created a *new* right or liability of an equitable nature against heirs and devisees for ancestral debts unknown to the equity jurisprudence of the national courts? It is undoubtedly true that an action at common law will not lie against an heir or devisee for the recovery of any debt or liability of the ancestor, unless the ancestor has expressly bound himself and his heirs in an instrument under seal, and then only to the extent of assets by descent from the obligor. But the jurisdiction of a court of equity to entertain a bill on behalf of a creditor and all others who may choose to make themselves parties, to charge the heirs and devisees with the pay-

ment of the ancestor's debt to the extent of assets by descent, is undoubted.''

The court cited several cases, among them Williams v. Gibbes, 17 How. (U. S.) 238; David v. Frowd, 1 Mylne & K. 200; Public Works v. Columbia College, 17 Wall. (U. S.) 521; Borer v. Chapman, 119 U. S. 587; Sawyer v. Birchmore, 1 Keen 392, and concluded:

''These authorities clearly show that this court is possessed of original and inherent jurisdiction to take cognizance of a suit by a creditor to charge heirs, devisees and legatees to the extent of assets taken by descent or devise, with ancestral debts. The state statute created no *new* right, and this court, in cases of this sort, will administer the law of its own forum as settled by the decisions of the Supreme Court.''

The court in the Heilman case, however, denied the relief prayed for on the ground of laches, and the decree was affirmed by the Circuit Court of Appeals for the Seventh Circuit (30 C. C. A. 232), that court saying:

''It is true, in a strict sense, that the right to sue the heir of a deceased debtor did not exist at common law; but the right in equity to enforce payment of the debt out of the personal property of the ancestor, which had come into possession of the heir, seems to have been recognized long before devisees were declared liable by the statute of 3 Wm. and M.'' (citing cases). ''In People v. Brooks, 123 Ill. 246, to which reference has been made, the action was one of debt, and the discussion was necessarily confined to liability at common law and by the statutes of Illinois. Whatever may be said of the origin of the jurisdiction in question, it is settled beyond dispute that the national courts of equity possess it, and the principles on which they exercise it have been well defined.''

In David v. Frowd, *supra,* the master of the rolls, in the course of his opinion, observed:

''That if a creditor does not happen to discover the proceedings in the court until after the distribution has been actually made, by the order of the court,

amongst the parties having, by the master's report, an apparent title, although the court will protect the administrator who has acted under the orders of the court, yet, upon a bill filed by this creditor against the parties to whom the property has been distributed, the court will, upon proof of no wilful default on the part of such creditor, and no want of reasonable diligence on his part, compel the parties defendant to restore to the creditor that which of right belongs to him."

In Public Works v. Columbia College, *supra,* Mr. Justice Field, speaking for the court, says:

"The jurisdiction of a court of equity to reach the property of a debtor justly applicable to the payment of his debts, even when there is no specific lien on the property, is undoubted. It is a very ancient jurisdiction, but for its exercise the debt must be clear and undisputed, and there must exist some special circumstances requiring the interposition of the court to obtain possession of and apply the property. Unless the suit relate to the estate of a deceased person, the debt must be established by some judicial proceeding, and it must generally be shown that legal means for its collection have been exhausted."

In Borer v. Chapman, *supra,* Mr. Justice Matthews observes:

"Such assets were impressed with a trust which such creditor had a right to have administered for his benefit. It is upon the ground of such a trust that the jurisdiction of courts of equity primarily rests in administration suits, and in creditors' bills brought against executors or administrators, or after distribution against legatees, for the purpose of charging them with a liability to apply the assets of the decedent to the payment of his debts."

In Sawyer v. Birchmore, *supra,* it is said:

"The rule applicable to cases of this nature, as stated by Lord Eldon in Gillespie v. Alexander (3 Russ. 136), is that a creditor who does not come in till the executor has paid away the residue is not without remedy, though he is barred the benefit of the decree. If he has a mind to sue the legatees, and bring back

the fund, he may do so; but he cannot affect the executor at all."

In this connection the following cases may also be cited: Blair v. Allen, 55 Ind. 409; Johnson v. Culbertson, 79 Fed. Rep. 5; Payson v. Hadduck, 8 Biss. (U. S.) 293; Hall v. Martin, 46 N. H. 337.

The following are some of the holdings of the Supreme Court of this state which may be appropriately cited:

"Courts of equity have a paramount jurisdiction in cases of administration and the settlement of estates, and may control courts of law in their action in the settlement and distribution of estates." Grattan v. Grattan, 18 Ill. 167, 171; Elting v. First Nat. Bank, 173 Ill. 368, 380. "The administration of assets, in cases of intestacy, is one of the acknowledged powers of a court of chancery, and the peculiar state of facts in this case appropriately called its functions into active exercise. * * * It is the settled policy of our laws, that all the creditors of a deceased person shall be permitted to participate in the distribution of the assets." Van Syckle v. Richardson, 13 Ill. 171, 175: "The principles of the English cases have been very generally adopted by the courts of this country, and held to be the law, except where modified by statute." Harris v. Douglas, 64 Ill. 466, 473. "The law is settled, in this state at least, that a court of equity will not ordinarily assume jurisdiction until the claimant shall have exhibited his claim and had it allowed in the County Court, and then if any special reasons, that may be deemed sufficient, can be assigned why that court cannot afford the requisite relief, equity will assist him but not otherwise." Id., p. 469; Blanchard v. Williamson, 70 Ill. 647, 651. In Van Meter's Heirs v. Love's Heirs, 33 Ill. 260, a bill was filed to enforce payment by heirs of a demand against their ancestor, on account of money in their possession derived from the personal assets of the ancestor. The court said: "The decree in this case, instead of being several

against the defendants, should have been joint for the whole debt proved to be due the heirs of Van Meter. The liability of Love's heirs for the debts of their ancestor, both in law and in equity, is to the extent of the full amount which came to them by descent.'' See also Cutright v. Stanford, 81 Ill. 240, 244.

We are aware of many cases in this state where a court of equity on bill filed has refused to take jurisdiction for the reason of the present or past existence of an adequate remedy at law, such as the right on the part of complainant to file his claim with the Probate Court, or bring a suit at law, within the two-year period, which had not been done. A few of these cases may properly be mentioned as illustrative of the many. Wingate v. Pool, 25 Ill. 122; Freeland v. Dazey, 25 Ill. 294; Garvin v. Stewart's Heirs, 59 Ill. 229; Moore v. Chandler, 59 Ill. 466, 468; Winslow v. Leland, 128 Ill. 304, 342; Mugge v. Ewing, 54 Ill. 236; Hamilton v. Downer, 152 Ill. 651, 654; Strauss v. Phillips, 189 Ill. 9, 19, 23; Tinker v. Babcock, 204 Ill. 571, 574. In Mortimer v. Potter, 213 Ill. 178, 182, the fact of the nonaccrual of the claim within the two-year period was given as one of two grounds why the claim should be sustained in equity, notwithstanding the fact that the same was not presented against the estate of the deceased during said period.

Counsel for appellants also contends that the legatees under said will cannot be held liable in an equity proceeding for the further reason that the bond, which Walter Shoemaker executed in said replevin action, did not purport to bind his legatees but only his ''heirs, executors and administrators.'' We cannot agree with counsel. We think it is manifest from the words used in the bond that the deceased intended to bind both his real and personal estate in the event of his death. ''In common speech the word (heirs) is frequently used to indicate those who come in any manner to the ownership of any property by reason of the death of the owner; * * * the persons upon whom property

devolves on the death of another, either by law or by will; the persons entitled by will or otherwise to share in the estates of decedents." (21 Cyc. 416.) "The word 'heir' is technically distinguished from 'legatee' or 'devisee,' but it is sometimes used 'in its more general sense, as indicating the person upon whom property devolves on the death of another'; and hence, when the intention is clear, the word  *  *  *  may sometimes be treated as equivalent to legatee or devisee." Taylor v. Perkins, 72 N. H. 349.

*Fifth.* Counsel for appellants further contends that, as the land situated in South Dakota was sold before the present bill was filed, only the real estate of the deceased situated in Illinois is liable for appellee's claim, if any liability exists. To this contention counsel for appellee reply that not only is the land situated in Illinois liable, but also the proceeds received from the sale of the South Dakota land; and counsel further contend, as to the $50,000 in money received by Elizabeth Shoemaker and Charles W. Shoemaker from the sale of the undivided one-half interest in the personal property assets of the firm of Marriott & Co. located in South Dakota, that the proceeds of such undivided interest (there having been no administration in South Dakota) are charged with the payment of appellee's claim, under the statutory provisions of that state. In support of this contention counsel for appellee argue that the situs of such assets was in South Dakota, that the letters testamentary issued by the Probate Court of Cook county conferred no jurisdiction over them, that under the South Dakota statutes personal property in that state bequeathed by will, whether owned by a resident or nonresident of that state, is subject to a trust for the payment of the debts of the decedent, that that trust cannot be defeated by executors in Illinois inventorying such property, selling the same for cash, and bringing the proceeds into Illinois and distributing the same under the Illinois administration, that as to such South Dakota property the executors

were executors *de son tort,* and that, as each of the residuary legatees under said will received from such property about $25,000 in money; the trust attaching to the same is in itself sufficient to support the decree herein, which is less than said sum. To all of this counsel for appellants rejoins that the administration and distribution of personal property is governed by the law of the country of the domicile of the decedent, that the executor or administrator of the domicile may take possession peaceably of property of the decedent in another state, or there collect a debt if voluntarily paid, and that if there is no opposing administration in that other state, the courts of that state will recognize his title as rightful and protect it as fully as if he had there taken out letters, and, hence, it follows that the funds received from the sale of the one-half interest in the copartnership property of Marriott & Co. were properly transferred to the executors in Illinois and accounted for by them in the Probate Court of Cook county.

We are of the opinion that in this equity proceeding appellants are not only liable as to the real estate in Illinois, but also as to the $2,500 received from the sale of the South Dakota land. As to the further contentions of counsel for appellee in reference to said $50,000, so received from the sale of said one-half interest in said partnership property, we think it unnecessary for us to discuss or pass upon the same, because, in view of our opinion above expressed (that appellants are liable in equity for the payment of appellee's judgment to the extent of the amount of real and personal estate each has received under said will, and that the decree of the chancellor should be affirmed) if counsel for appellee are incorrect in their said contentions, it would not affect that opinion, and if they are correct, it would be but another reason for affirming the decree.

The decree is affirmed.

*Affirmed.*